# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

P J COTTER,

        Plaintiff,

    v.

U.S. BANK, N.A. AS TRUSTEE FOR
GREENPOINT MORTGAGE
FUNDING TRUST MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2006-AR4; OCWEN LOAN
SERVICING, LLC; and TROTT LAW,
P.C.,

        Defendants.

Case No. 16-13080

Honorable Sean F. Cox

Magistrate Judge Anthony P. Patti



---

## PLAINTIFF'S <u>AMENDED</u> OBJECTIONS TO
## MAGISTRATE JUDGE'S RECOMMENDATIONS

---

       Plaintiff, PJ Cotter asks the Court to reconsider the Magistrate Judge's

***Report and Recommendation to Grant U.S. Bank and Ocwen's Motion to***

***Dismiss*** (DE 5) (the "Motion") and files these objections[1], as authorized by Federal

Rule of Civil Procedure 72(b)(2).

---

[1] Plaintiff amended his objection before Trott Law replied in order to comply to the ***Procedure on Objections***. "Any objections must be labeled as "Objection No. 1," and

1

## A. INTRODUCTION

1. Plaintiff is PJ Cotter ("Mr. Cotter"); Defendants are U.S. BANK, N.A., as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR4, (the "Trustee") Ocwen Loan Servicing, LLC, ("Ocwen") and Trott Law, P.C. (Trott Law).

2. Plaintiff sued Defendants for violations of the violations of the Fair Debt Collection Practices Act, ("FDCPA"), breach of contract, unjust enrichment, conversion, slander of title, misrepresentation, and wrongful foreclosure.

3. On September 2, 2016, the Court transferred Defendant Ocwen and Trustee's (collectively "Defendants") Motion to Dismiss to Magistrate Judge, Anthony P. Patti for a ruling.

4. Defendant Trott Law, P.C. is not a movant on DE 5.

5. On April 4, 2017, Magistrate Judge, Anthony P. Patti ruled on the Motion and Defendants' Motion to dismiss the ***Complaint*** in its entirety, on the merits. (DE 5.) Alternatively, the Court should dismiss the FDCPA claim on

---

"Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d)." (DE 25 p. 8.)

the merits and dismiss or remand the remaining state-law claims by declining to exercise supplemental jurisdiction over them.

6.  Mr. Cotter files these objections to the Magistrate Judge's ***Report and Recommendation to Grant U.S. Bank and Ocwen's Motion to Dismiss.*** ("Report.") (DE 5.)

## B. ARGUMENT

7.  If a party timely objects to the Magistrate Judge's recommendations or findings, the district court must determine de novo any part of the objectionable portions of the recommendations or findings. 28 U.S.C. §636(b)(l); Fed. R. Civ. P. 72(b)(3). The district court may then accept, reject, or modify the recommendations or findings, in whole or in part. 28 U.S.C. §636(b)(l); Fed. R. Civ. P. 72(b)(3). The district court may also receive additional evidence or return the matter to the Magistrate Judge with instructions. 28 U.S.C. §636(b)(l); Fed. R. Civ. P. 72(b)(3).

## C. OBJECTIONS

8.  Mr. Cotter objects to the Magistrate Judge's Report and Recommendations for the following reasons, in the format and order found in the Report:

## **Magistrate Judges Recommendation**

The Magistrate Judge recommended dismissal because the *"complaint fails to state a claim upon which relief can be granted."* and accepted the allegations as true. (DE 24. p. 1.)

## Magistrate Judge's Background

The Magistrate Judge's understanding of the allegations pleaded and the underlying legal theories in the pro se ***Complaint*** is distorted.

The Magistrate Judge properly ascertained Plaintiff alleged, *Defendants have failed to prove that they are the **rightful holders of his note** and therefore do not have a right to foreclose on the mortgage"* (emphasis added). (DE 24 p. 2. ¶1.) The Report also distinguishes between the mortgage loans documents—the note and mortgage—and identifies the purpose and nature of each with, *"executing a **promissory note** as security for the loan **and** giving a **mortgage** interest in the property as security for the note"* (emphasis added). (DE 24 p. 2. ¶1.)

The Magistrate Judge considered the timely rescission, noting the Servicer acknowledged the rescission, but does not address whether the Servicer fulfilled its statutory requirements in a timely manner, or that the rescission was of no legal effect. (DE 24 p. 2. ¶2.) Plaintiff contends the Servicer, or an interested party had twenty days to respond or waived any right to make future claims against the note. - The statute reads,

"Within 20 days after receipt of a notice of rescission, the creditor
shall return to the obligor any money or property given as earnest
money, downpayment, or otherwise, and shall take any action
necessary or appropriate to reflect the termination of any security
interest created under the transaction." 15 U.S. Code § 1635(b) - Right
of rescission as to certain transactions.

While the rescission was not Mr. Cotter's primary position it is a pertinent

factor related to verification, validation, and enforceability.

**Objection No. 1**

Mr. Cotter objects to the Magistrate Judge's generic statement, *"Plaintiff*

***apparently defaulted*** *on the note for non-payment."* (DE 24 p. 3. ¶1.) This

interpretation conflates two distinct defaults. The first being Mr. Cotter's failure to

make payments, and the second, the 'declaration' of default by a rightful

noteholder under Mich. Comp. Laws § 440.1101 *et seq.* (UCC). Mr. Cotter

recognizes that a rightful holder of his note can declare a default and pursue an

enforcement action, i.e. sell his home. However, if the possessor of his note is not a

legally valid holder, it does not have the right to enforce the note, or the mortgage

via the Trustee.

**Objection No. 2**

Mr. Cotter objects to the Magistrate Judge's next inaccuracy, which reads,

*"Plaintiff responded by sending several "demand" letters asserting that it had no*

5

*legal right to foreclose.* " (DE 24 p. 3. ¶1.) Contrary to the Report, Mr. Cotter's

UCC Demand Letters did not assert the recipients of his letters, *"had no legal right*

*to foreclose. "* Clearly, Mr. Cotter's UCC Demand Letters sought proof the

possessor of his note did in fact hold 100% of the rights in his note, by virtue of a

fully qualifying UCC transfer, entitling it to enforce his note. Mr. Cotter's UCC

Demand Letters requested information, and contain no preconceived accusatory

language, contrary to the Magistrate Judge's understanding.

**Objection No. 3**

Mr. Cotter objects to the Magistrate Judge's oversimplification of the two

timely requests for validation of the debt, which overlook important facts. (DE 24

p. 3. ¶2.) Mr. Cotter's initial request for validation was an incomprehensible and

incoherent collection of requests. Within the 30 days allotted, Mr. Cotter withdrew

his initial request replacing it with a much simpler and cohesive request for

validation of the debt. Ocwen did respond to the second request, but failed to

demonstrate its client had a right to enforce his note. At issue was not the amount,

or the name of the person owed, rather Mr. Cotter sought proof/validation the

alleged possessor/holder of his note had the enforcement rights alleged.

The Defendants sought to foreclose on the mortgage. The Defendants and

Magistrate Judge's focus is on Mich. Comp. Laws § 600.1101 *et seq.* Mr. Cotter

directed the focus on the underlying note, and alleged holder under Mich. Comp. Laws § 440.1101 *et seq.*

How can a Collector verify/validate a debt/obligation under the FDCPA if, it cannot, or will not show it has a right to enforce? Mr. Cotter claims they did not, that the Defendants actions are violative of the Act. This is foundational, yet the Magistrate Judge dismisses it summarily.

The balance of the Magistrate Judge's background lists Mr. Cotter claim arising from the Defendants' failure to validate by showing the Trustee was a legally valid holder of his note.

The Court understands the distinctions between the mortgage and note, and recognizes the distinctions between Mich. Comp. Laws § 440.1101 *et seq.* and Mich. Comp. Laws § 440.1101 *et seq.* The UCC controlling the underlying note, and the right to enforce, while the second only controls the nonjudicial process— but cannot benevolently instill enforcement rights when Mr. Cotter's exhibit show the recipients of his UCC Demand Letters failed or refused to demonstrate anyone had a right to enforce his note.

## B. Standard

Mr. Cotter's Opposition to the Motion delineated the standards he believed are applicable. (DE 11 p. 11. ¶2.)

7

## C. Discussion

The Magistrate Judge's opening statement is spot on. "[Defendants] *summarize the **crux** of Plaintiff's complaint as his claim that U.S. Bank does not have the right to foreclose because it is not a rightful holder of the note and therefore "does not have a right to enforce the security instrument—a Mortgage— without the legal right to enforce the Note""* (emphasis added). (DE 24 p. 5. ¶2.)

The balance of the discussion is accurate, however Mr. Cotter believes a little clarity is needed regarding footnote 1 given the Magistrate Judge was *"somewhat puzzl*[ed]". Mr. Cotter's opposition raised for the sake of argument the following. (DE 24 p. 6. ¶1.)

> Although Cotter did not plead RESPA violations, RESPA adds another layer of complexity to Cotter's demands under the UCC. His letters constituted a qualified written request for information under RESPA, 12 U.S.C. § 605(e)(l)(B). Cotter made requests for specific information, but the Servicer did not directly respond with the information requested. (DE 11 p. 11. ¶1.)

This portion of his arguments showed that Servicer had duties to comply with his request above and beyond those found in the FDCPA.

### 1. FDCPA

**Objection No. 4**

Mr. Cotter objects to the Magistrate Judge's analysis of the FDCPA claim by relying only upon the discombobulated July 8, 2016 request for

8

verification/validation. The analysis does not include the second timely requests made with his July 26, 2016 request for validation. This request requires substantiation under the UCC. (DE 1-1 p. 88.) The copy in the record is of poor quality. The pertinent text reads,

*"Renewed and Revised*

### REQUEST FOR VERIFICATION-VALIDATION OF THE DEBT UNDER THE FDCPA
**Substantiated Under Michigan's Uniform Commercial Code, § 440.1101 et seq.**

*I am in receipt of your 30 day § 1692 notice dated June 29, 2016. I have withdrawn my prior request for verification because it was unclear, convoluted, and complex.*

*This is notice pursuant to the FDCPA that your claim is disputed and meaningful validation is requested. This is NOT simply a request for "verification" or proof of my mailing address, but rather a request for **VALIDATION**. I respectfully request that your offices provide competent evidence that I have a legal obligation to pay you or your client.*

*Please provide me with the following:*

- *What the money you say I owe is for;*

- *Explain and show how you calculated what you say I owe;*

- *Provide copies of any papers that show I agreed to pay what you say I owe;*

- *Provide copies of any papers that show your client has the **right** to declare a default and initiate an enforcement action in full accordance with **§ 440.1101 et seq.**"* (no emphasis added.) (DE 1-1 p. 88.)

Again, how can a Collector verify/validate a debt/obligation under the FDCPA if, it cannot, or will not show it has a right to enforce? Mr. Cotter claims they did not, that the Defendants' actions are violative of the Act?

**Objection No. 5**

The Magistrate Judge acknowledged Mr. Cotter's contention, *"but Plaintiff asserts that the reply did not substantiate his claim"* (emphasis added). (DE 24 p. 8. ¶1.)  Mr. Cotter objects to the Magistrate Judge's oversimplification and dilution of his substantive rights found in the FDCPA. (DE 24 p. 8. ¶2.)

While the Magistrate Judge's caselaw shows the bare minimum a Collector may be proffer, the Report is devoid of caselaw showing Mr. Cotter cannot use the FDCPA by itself or in conjunction with the UCC to challenge an alleged holder of a note to substantiate the full validity of its claim.

For the sake of argument, the Magistrate Judge's argument and caselaw would allow any wrongful Creditor or note holder to pillage the unsuspecting by naming the Creditor and providing an accurate accounting, whether or not the Creditor had a legal right to enforce the obligation.

**Objection No. 6**

Before making his recommendation regarding the FDCPA claim, the Magistrate Judge expresses his failure to grasp the gist of Mr. Cotter's FDCPA claim with, *"It is not at all clear what Plaintiff expects Defendants to do in order to sufficiently verify the debt."* (DE 24 p. 9. ¶1.) Mr. Cotter objects to any recommendation the Magistrate Judge makes related to the FDCPA first given the

10

court understood the crux of his ***Complaint*** and the nature of the record sought under the FDCPA and UCC, given the spot on opening sentence of the discussion. *"*[Defendants] *summarize the **crux** of Plaintiff's complaint as his claim that U.S. Bank does not have the right to foreclose because it is not a rightful holder of the note and therefore "does not have a right to enforce the security instrument—a Mortgage—without the legal right to enforce the Note""* (emphasis added). (DE 24 p. 5. ¶2.)

### Objection No. 7

Mr. Cotter objects to the dismissal of his FDCPA claim, and subsequent remanding of the matter back to the St. Clair County Court. The Defendants chose this forum to hear all claims. The Magistrate Judge concluded, *"Plaintiff has failed to state a claim upon which relief can be granted on his state claims as well."* Mr. Cotter, pro se, objects and should be permitted to amend his ***Complaint*** to provide clarity and comply with the pleading requirements of the federal venue.

### 2. Breach of Contract

The Magistrate Judge properly opens the section with, *"Plaintiff asserts that Defendants breached their **written**, **statutory**, and implied contractual obligations by refusing to demonstrate that U.S. Bank was the rightful holder of the note, by assessing late fees, and by initiating foreclosure proceedings."* (DE 24 p. 11. ¶1.)

11

The Magistrate Judge's legal reasoning centered on implied contractual obligations which was supplemented with footnote 4.

### Objection No. 8

Cotter objects to the Court's failing to recognize the note was the 'written' contract breached. The Defendants maintain the Trustee was the Note Holder. The opening sentence of section ***3 Unjust Enrichment*** below, appears to unwind some of the legal logic of this section, ***2 Breach of Contract***. It reads, *"Plaintiff's unjust-enrichment claim fails as a matter of law because an express contract relating to the disputed subject matter exists between the parties."* (DE 24 p. 14. ¶1.)

Moving on we see, the Note reads, *"**Notice of Default.** If I am in default, the note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may . . ."* (DE 1-1 p. 24. ¶7.C.) Mr. Cotter, relying on the Note itself and the statutory scheme of the UCC challenged the alleged Note Holder with his clear and well-articulated UCC Demand Letters on June 17, 2013, (Ocwen UCC Demand Letter, DE 1-1 p. 59.); (Orlans Associates, P.C. UCC Demand Letter (prior foreclosing law firm), DE 1-1 p. 66.)

Receiving no meaningful response, On February 2, 2014 Mr. Cotter sent reminder letters. (Ocwen reminder letter, DE 1-1p 73.); (Orlans reminder, DE 1-1 p. 74.)

A second timely request for validation, which was to be substantiated by the Collector showing the Creditor was in fact entitled to enforce his Note.

The bidirectional correspondence is preserved in the record spanning DE 1-1 pp. 59-120. This includes four reminders and Mr. Cotter's letters clearly articulating the deficiencies of any responses he received such as his letter found at DE 1-1 p. 86.

No Defendant entered records showing any person was entitled to enforce his note.

**Objection No. 9**

The caselaw found in footnote 4 is not controlling, first because there is a written contract between the parties and a statutory duty of good faith under the UCC as pleaded in the opposition. Mr. Cotter objects on the basis that the Magistrate Judge has failed to take an account the applicability of the UCC over the parties' dispute.

Beginning with page 12, the Magistrate Judge broaches the **heart and soul** of the ***Complaint*** with, *". . . the first step for the Court is to determine whether Plaintiff's allegations with respect to **Defendants' ability to enforce the <u>note</u>** are sufficient to survive a motion to dismiss."* (DE 24 p. 12. ¶1.)

After crafting the important *"first step"*, the Magistrate Judge makes a hard left focusing exclusively on the **mortgage**—as opposed to the note. All of the caselaw offered holds the mortgage in high esteem and central to Michigan's foreclosure laws. This is quite evident with just a cursory analysis of the caselaw, which follows.

Quoting, *"the Sixth Circuit explains that "the UCC does not apply to mortgage foreclosures." Gardner v. Quicken Loans Inc. . . . Although Plaintiff suggests that the "fact pattern of Gardner and the catalog of cases do not fit the fact pattern [of] this case, and therefore are not controlling," he does not offer any factual distinction"* (internal citation omitted.) (DE 24 p. 12. ¶1.)

**Objection No. 10**

Mr. Cotter objects because in his ***Complaint*** he is not contended that the UCC applies to *"mortgage foreclosures."* He contends the domain under which the note falls is the UCC. Further, he contends the Defendants were given many opportunities under the FDCPA to show the Trustee was entitled to enforce the mortgage after it showed it was entitled to enforce the note under the UCC.

For the sake of argument, even if Mr. Cotter had not made his second timely FDCPA request for validation of the debt, the Trustee, and Codefendants had a duty to respond to his UCC Demand Letters. Having failed or refused to comply

14

with his inquiry/requests Mr. Cotter believes he would have alternate claims regardless of in artfully express them as a pro se.

**Objection No. 11**

The Magistrate Judge illuminates the fact that Mr. Cotter stated *Gardner v. Quicken* is a different fact pattern. (DE 24 p. 12. ¶1.) Mr. Cotter objects that the Magistrate Judge perceives that he *"attempted to forestall [his] mortgage foreclosure by alleging. . ."* Mr. Cotter demanded of the Defendants with his UCC letters that the holder or its agent show it was entitled to enforce." The fact pattern Gardner does not show she sent UCC Demand Letters fashioned as Mr. Cotter's, or that she sent a timely FDCPA request to validate the debt to be substantiated by the UCC.

**Objection No. 12**

Next, in his Report, Magistrate Judge brings into focus Mich. Comp. Laws § 600.3204(a)(d) which, *"provides that is serving said agent of the mortgage loan has the authority to foreclose a mortgage by advertisement."* (DE 24 p. 13. ¶1.) This is cobbled with Mr. Cotter's recognition that Ocwen is the Servicer of the mortgage loan. Mr. Cotter objects because Magistrate Judge conflated the Servicer's role—Servicer—and its statutory authority to foreclose under Mich. Comp. Laws § 600.3204(a)(d) with entitlement to enforce the note under the UCC

15

by virtue of a qualifying transfer, which all Defendants have failed or refused to show when legitimately challenged.

The Magistrate Judge believes the breach-of-contract claim fails. (DE 24 p. 13. ¶1.) The Report fails to cite any caselaw showing Mr. Cotter did not have the right to challenge the Trustee and its agents under the FDCPA, UCC, or his note.

### Objection No. 13

Breach of contract analysis continues with a second argument related to *"authority to foreclose by advertisement."* Mr. Cotter objects as this is a variation of the prior mortgagee argument which failed to address the rights of a note holder must possess to be entitled to enforce. This logic implies the mortgage carries with it magical enforcement rights sufficient overflow onto the note. However, the Trustee and other Defendants failed to produce records in response to his UCC Demand Letters or second timely request for validation. Mr. Cotter received a copy of the note and mortgage but did not receive sufficient records to show the Trustee had more than mere rightless possession.

### Objection No. 14

Again Mr. Cotter objects because the Magistrate Judge's caselaw does not show the Collector did not have to respond meaningfully to his request for validation, that the mortgage foreclosure laws supersede the UCC, or provide the

16

mechanics by which the mortgagee acquires the enforcement rights in a note, and

that it does not have to show if, when, and how it came to gain those rights to the

notes maker and counterparty when challenged.

This section closes,

> *In sum, Plaintiff contends that Defendants lacked authority to foreclose on the property because they did not have "100% of the rights in the note." (DE 11 at 14.)* **Defendants do not argue that they have "100% rights." <u>Instead</u>,** *they properly assert that they are* **entitled to foreclose <u>because</u> of their <u>ownership</u> of <u>legal title to the security lien</u>,** *which is consistent with Michigan law. Accordingly, Plaintiff's argument is without merit and this claim should be dismissed* (emphasis added). (DE 24 p. 13. ¶2.)

**Objection No. 15**

Mr. Cotter objects to the Magistrate Judge's finale for the above section. Mr.

Cotter's breach of contract cause of action is not founded on the ownership of the

note or mortgage. As argued above, the applicability or inapplicability of the UCC

in relation to Mr. Cotter's claims is not been addressed. The Magistrate Judge

recognizes the Defendants did not defend any alleged rights in the note, and as

such may have waived any legal rights the holder may have possessed.

The Magistrate Judge and Defendants have not shown Mr. Cotter does not

have a right to know the proper person is enforcing his note. No caselaw or

statutory authority shows otherwise.

### 3. Unjust Enrichment

**Objection No. 16**

The pro se Plaintiff should be permitted to amend his ***Complaint*** and clarify his claims.   Ocwen, the Servicer received a benefit of Mr. Cotter via the acquisition of servicing rights in the mortgage loan. From this position, the Defendants created an inequity by virtue of their positions as Servicer. Mr. Cotter does not have an express contract with the Servicer. Mr. Cotter alleges Defendant Ocwen used its superior position to support the alleged noteholder's enforcement efforts.

**Objection No. 17**

The Magistrate Judge raises, *"Plaintiff executed two contracts <u>related</u> to the subject matter of his claim: the note and the mortgage"* (emphasis added). (DE 24 p. 14. ¶2.) Mr. Cotter does not have an express contract with Servicer Ocwen and objects to the Magistrate Judge's legal reasoning and inapplicable caselaw.

### 4. Conversion

**Objection No. 18**

Mr. Cotter object to the magistrates determination that the claim for conversion fails, based on the following:

Mr. Cotter believes the Magistrate Judge's caselaw fails to carry the desired result. The Report nuances the conversion claim by quoting, *"Michigan courts take precautions to "avoid confusing contract and tort law.""* From this step, we learn Mr. Cotter's remedies—if any—may be contractual. *"Where a plaintiff claims <u>only monetary losses stemming from a written contract</u>, the plaintiff is limited to <u>contractual</u> remedies."* From the inverse, Mr. Cotter learns, *"if a relation exists that would give rise to <u>**a legal duty**</u> without enforcing the contract promise itself, <u>**the tort action will lie**</u>, otherwise it will not"* (emphasis added) (all internal quotations omitted.) (DE 24 p. 15. ¶1.)

The Magistrate Judge drives his positional caselaw home with the holding *Ulrich v. Fed. Land Bank of St. Paul*, *"("[T]here can be no tort liability unless the plaintiff alleges and proves <u>the violation of a legal duty separate and distinct from the obligations owed by defendant under the contract</u>" (internal quotations omitted))."* (DE 24 p. 15. ¶1.)

The capstone of the Report's logic is, *"Plaintiff is therefore seeking monetary losses <u>stemming from a written contract</u> and <u>**any**</u> **legal duty would be based on enforcing the contract promise itself.**"* (DE 24 p. 15. ¶2.)

On one hand, the Magistrate Judge asserts, Mr. Cotter does not have a right to challenge the alleged holder of his note given the holder does not have a duty to

validate its claim under the FDCPA and UCC. On the other hand, some unknown duty lies in the enforcement of the contract/Note. And because there is a written contract, the claim fails.

**Objection No. 19**

Mr. Cotter objects because, he contends the Defendants had statutory and noncontractual legal duties under the FDCPA to validate the Note Holder was entitled to enforce his note—not just confirm the name of the Creditor and double-check the math.

Mr. Cotter also contends the Defendants failed in its statutory duties under the UCC as elaborated within his ***Complaint*** and ***Opposition*** to the Defendants' Motion.

The Magistrate Judge appears to support Mr. Cotter's argument in ***6 Misrepresentation*** with the legal reasoning, *"Plaintiff's assertion that Defendant's failure or refusal "to show" that it was the rightful holder of the note does not indicate tortious conduct, but at best a **breach of a contractual or statutory duty**."* (DE 24 p. 18. ¶2.)

Turning to the Magistrate Judge's legal reasoning close the section, *"Moreover, any conversion action over Plaintiff's <u>real property</u> is meritless*

because *"[o]nly personal property may be the subject of an action for conversion""* (emphasis added). (DE 24 p. 16. ¶1.)

Plaintiff's property—subject to conversion—was his rights and protections found in the UCC and the note itself. This is/was Mr. Cotter's personal property. Mr. Cotter did not raise express terms in the note or mortgage. Defendants violated Plaintiff's rights, not terms of an express agreement.

### Objection No. 20

Mr. Cotter object to the entire section and should be allowed to amend his *Complaint* if further clarification is needed for Court's understanding.

### 5. Slander of Title

### Objection No. 21

Upon examining the allegations and facts, the Magistrate Judge found,

> *"Plaintiff asserts that he has sufficiently pleaded the element of falsity because Defendants "advertised his property without the legal right to do so[.] (DE 11 at 26.) As addressed above, U.S. Bank was entitled to foreclose by advertisement under Michigan law and Plaintiff concedes that he stopped making payments on the mortgage"* (emphasis added). (DE 24 p. 17. ¶1.)

This section of logic daisy chains from the flawed understanding or logic raised by Cotter when assessing the Magistrate Judge's background section. (supra p. 3. ¶2.) Mr. Cotter objected to the Magistrate Judge's generic statement,

*"Plaintiff **apparently defaulted** on the note for non-payment."* (DE 24 p. 3. ¶1.)
This interpretation conflates two distinct defaults. The first being Mr. Cotter's
failure to make payments, and the second, the 'declaration' of default by a rightful
noteholder under Mich. Comp. Laws § 440.1101 *et seq.* (UCC). Mr. Cotter
recognizes that a rightful holder of his note can declare a default and pursue an
enforcement action, i.e. sell his home. However, if the possessor of his note is not a
legally valid holder, it does not have the right to enforce the note, or the mortgage
via the Trustee.

Michigan's foreclosure laws do not GRANT automatic entitlement to
enforce a mortgage note. The body law presumes the Mortgagee is authorized to
foreclose. Nothing in the body of law prevented Mr. Cotters challenges under the
UCC and FDCPA.

Mr. Cotter alleged: (a) he sent his second request for verification/validation
and his UCC Demand Letter; (b) he sought proof of the Note Holder's entitlement
to enforce his Note; (c) all Defendants failed or refused to respond meaningfully to
show the Trustee was entitled to enforce his note; and (d) a person in wrongful
possession, or one in possession but without the rights of a holder was enforcing
his note.

**Objection No. 22**

Mr. Cotter contends that if the Defendants could have shown the Trustee was a rightful holder, the claim would collapse, but absent proof, Mr. Cotter must object to the Magistrate Judge's determination that Plaintiff failed to show the first element of falsity.

### 6. Misrepresentation

**Objection No. 23**

The Magistrate Judge recognized Mr. Cotter made general allegations, but asserts the pro se Plaintiff did not plead with adequate specificity. While general allegations are in place, the Magistrate Judge recommends the claim fail, because the ***Complaint*** lacks specific statements relating to details such as 'who' and 'when'.

This is a reason to permit Plaintiff to amend. The Defendants removed this action to this forum. He pleaded to what he believed were the State Court's requirements.

As if 'out of the blue' the Misrepresentation section closes, *"Furthermore, Plaintiff's assertion that Defendant's failure or refusal "to show" that it was the rightful holder of the note does not indicate tortious conduct, but <u>at best a breach of a contractual or statutory duty</u>. As explained above, no such breach has been*

23

*shown on these pleadings"* (emphasis added). (DE 24 p. 18. ¶2.) In other word,

some plausible claim lies within. The recognition of this *breach of a contractual or*

*statutory duty* was addressed in other sections above.

Mr. Cotter object to the Magistrate Judge's recommendation.

## 7. Wrongful Foreclosure

### Objection No. 24

The Magistrate Judge references Mr. Cotter's UCC Demand Letters and

discounts the Defendants' failure to respond. No caselaw or statutory authority was

given to show the Defendants did not have a duty to respond to the UCC Demand

Letters or request for verification requiring substantiation under the UCC.

Again citing *Gardner*, the Report proclaims/pronounces, *"As addressed*

*above, Defendants* [sic (plural)] *were **entitled to foreclose** by advertisement*

*pursuant to Michigan law and the UCC does not apply to mortgage foreclosures."*

It was Mr. Cotter's understanding the Trustee was holding itself out as the Note

Holder—not the collective.

Mr. Cotter argued the addressed the fact pattern of Gardner above and likes

the argument applies to this section. Therefore, Mr. Cotter objects to the

recommendation to dismiss the claim.

### D. Conclusion

Mr. Cotter contend the Magistrate Judge's Report and Recommendation does not encompass the totality and weight of the Plaintiff's claims, and as such fails to properly apply the law as found in the UCC and FDCPA to his facts.

The Magistrate Judge acknowledges, [T]he Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Mr. Cotter should be permitted to amend his Complaint.

(End of Magistrate Judge's format and numbering.)

9. Because the Magistrate Judge's findings and recommendations are erroneous, Mr. Cotter asks the Court to reject the Ocwen and Trustee's Motion to Dismiss.

Respectfully submitted,

By: _P J Cotter_

P J Cotter, Pro se
PO Box 131
Anchorville, MI 48004
810-459-6972
pocmich@yahoo.com

Date: April 24, 2017

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2017, I filed a hardcopy of the foregoing

document with the Clerk of the Court, which will send notification of such filing to

all registered recipients via the ECF, and upon the following by first-class United

States mail, with postage prepaid:


Nasseem S. Ramin
**DYKEMA GOSSETT PLLC**
400 Renaissance Center, 37th Floor
Detroit, MI 48243

Paul J. Santi
**TROTT LAW, P.C**.
31440 Northwestern Hwy
Suite 200
Farmington Hills, MI 48334


P J Cotter, Pro se
PO Box 131
Anchorville, MI 48004